15741

MACK v. BARNETT TIRE & BATTERY CO. *ET AL.*

(34 S. E. (2d), 472

*Mr. T. P. Taylor,* of Columbia, S. C., Counsel for Appellant

*Messrs. E. W. Mullins* and *D. McK. Winter,* both of Columbia, S. C., Counsel for Appellant

*Mr. C. T. Graydon,* of Columbia, S. C., Counsel for Respondent,

June 7, 1945.

Mr. Chief Justice Baker delivered the unanimous Opinion of the Court.

We will hereafter refer to the plaintiff-respondent-appellant, L. C. Mack, merely as Mack, and to the defendant-appellant, Astor M. Krell, as Krell, and to the defendant-respondent, Barnett Tire and Battery Company, as Barnett Company.

On or about February 21, 1944, Mack drove his automobile, a Mercury, to the filling station operated by Barnett Company at the corner of Rosewood Drive and Woodrow Street in the City of Columbia, for the purpose of having it greased and washed and the oil in it changed. Mack was informed by the manager of Barnett Company that his "wash boy" had not appeared for work on this day and that he could not wash the car but he could change the oil and grease it. During the conversation thereabout, the manager of this station of Barnett Company suggested that he could probably get Krell to wash the car and that Barnett Company would complete the work to be done thereon. Whereupon, the manager of Barnett Company called to the "wash boy" employed by Krell, whose station was almost directly across the street, and who was working on the premises, and asked him if he could wash a car; and, upon being informed that he could, had this "wash boy" come over to his station and instructed him to drive Mack home and bring the car back and wash it. The "wash boy", a negro named Isaiah Henderson, got in the front seat of the car of Mack, and Mack drove the car to his home and then turned it over to Henderson for the purpose of driving it back to be serviced as aforestated. Very soon thereafter, Mack had occasion to be driving past the filling station of Krell and, not seeing his car there, went in and inquired of Krell where it was and

informed him that it had been turned over to his "wash boy" who was supposed to have brought it back there for the purpose of washing it. Krell knew nothing of this but immediately tried to assist Mack in not only locating his car, but in locating Henderson. The car was finally found about a block from Henderson's home, where it had been wrecked; and it developed that Henderson, instead of returning directly from Mack's home to the filling stations of Krell and Barnett Company, had gone by his (Henderson's) home, had left the car out in front with the key in it, and a negro soldier had driven it off and wrecked it.

Mack, who was in the taxicab business, had never had his cars serviced by Krell, but for more than a year had dealt with Barnett Company, where he maintained a credit account, paying for the servicing of his cars at the end of each week.

Mack brought his action against Krell and Barnett Company for the damages to his Mercury automobile and for the loss of the use of same while it was being repaired. It is difficult to determine from the complaint if this action is bottomed on common law negligence or is an action on bailment, but apparently it was tried on the theory of a bailment.

At the conclusion of the testimony in behalf of Mack, Krell and Barnett Company moved for a nonsuit, which motions were refused until the whole case could be heard. And at the conclusion of the testimony for defendants, motions for direction of verdict on behalf of Krell and Barnett Company were made. The trial Judge granted the motion of Barnett Company but refused the motion of Krell and submitted the case to the jury as to him, resulting in a verdict by the jury in favor of Mack against Krell in the sum of $600.00.

Krell has appealed from the refusal of the trial Judge to order a nonsuit; and from his refusal to direct a verdict in his behalf (also on exceptions to the charge of the trial

Judge to the jury) ; and Mack has appealed, alleging error in granting the motion for directed verdict in behalf of Barnett Company.

## As to the Krell Appeal

The testimony discloses that Isaiah Henderson, the "wash boy" hereinbefore referred to, was employed by Krell to do only menial labor around the station, such as washing and greasing cars, under the supervision of either Krell or responsible white employees, and that he was never allowed on any occasion to even move cars around the station which had been brought there for servicing. He was allowed to drive a pick-up truck, the property of Krell, for the purpose of going out and changing tires on cars, etc., but this was the extent of his driving motor vehicles in any wise connected with the station. He had no authority whatsoever to accept a car for servicing, but this was handled entirely by Krell or some white employee. On the occasion when this negro employee accompanied Mack to his home in order to bring the car back for the purpose of washing it, and at the time thereof, Krell was in his filling station checking up the business of the day before with his white employee there, and knew nothing of the transaction, or the connection of his "wash boy" with the Mack car, until after the car had been wrecked. The "wash boy" had no authority to enter into a contract for any services to be performed on an automobile, and before any job was accepted it was a rule of Krell that a service ticket had to be made out, showing the things which were to be done to the car, the license number thereon, and the name of the owner of the car, and a copy of this service ticket is furnished the owner of the car.

Incidentally, this negro "wash boy" or waiting boy around the service station of Krell was known to Mack and on one occasion had worked for him.

"In order to establish a bailment there must be an acceptance of the article bailed, it being necessary to show either an express contract to take the article and later redeliver it, or circumstances from which such a contract can be implied; the duties and obligations of a bailee ordinarily cannot be thrust upon one against his consent—they must be voluntarily assumed by the party himself *or by some authorized agent,* as in every obligation founded upon contract. * * *" (Emphasis added.) 6 Am. Jur., Bailments, Section 67.

The evidence refutes any possible claim that Henderson had express authority to enter into a contract of any nature for and on behalf of Krell. And we think it is also obvious that there is no testimony from which authority so to do could be implied.

Here we have a negro employee, whose services were limited to manual labor, subject entirely to Krell's control and directions, and one who was not permitted to even drive customers' cars on and off the grease rack, and who had never been permitted to drive a customer's car into the station for servicing. So there were no appearances created which could have led Mack into the belief that this agent or servant had any authority whatsoever to enter into a contract for Krell with him or with the manager of Barnett Company to accept the car under discussion for the purpose of washing it, or to drive it from the home of Mack to the service station of Krell to there be washed.

Ordinarily the authority of an agent is a question of fact, but where, as here, the essential facts are not in dispute, the question is one of law for the Court. *Mortgage & Acceptance Corporation v. Stewart,* 142 S. C., 375, 140 S. E., 804.

There being nothing in the record from which it could be inferred that it was within the scope of the authority of Henderson to enter into a contract bind-

ing upon Krell, the trial Judge was in error in refusing the motion of Krell for a directed verdict in his favor.

### As to Mack's Appeal

We have hereinabove set out the facts, and in so ■ doing have stated them most favorably to Mack, as we are compelled to do when passing upon whether the trial Judge erred in directing or refusing to direct a verdict. There are material differences in the testimony of Mack and that of the manager of Barnett Company, especially as to the servicing desired by Mack when he drove his car into the filling station of Barnett Company and as to who instructed the employee of Krell to get in the car with Mack and drive it back to be washed.

But we think the testimony of Mack made an issue ■ for the jury to decide if under all of the circumstances as diclosed by the testimony a bailment was created between Barnett Company and Mack in that said company, according to the testimony of Mack, was to change the oil in the car and alemite it; and this would depend upon whether at the time the employee of Krell accompanied Mack to his home and was returning in the automobile, he was then acting as the agent of Barnett Company or as the agent of Mack.

The judgment of the Richland County Court is reversed, and the case is remanded to that court for the purpose (1) of entering judgment in favor of Krell and (2) for a new trial as to Barnett Company.

And it is so ordered.

Messrs. Associate Justices Fishburne, Stukes, Taylor and Oxner concur.